UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MIDWAY CATTLE RANCH, LLC, *et al.*                CIVIL ACTION

VERSUS                                            NO. 17-7468

PLAQUEMINES PARISH GOVERNMENT                     SECTION M (5)

## ORDER & REASONS

Before the Court are two motions filed by plaintiffs Midway Cattle Ranch, LLC and Crescent Excavation, LLC (together, "Plaintiffs") – (1) a motion to enforce the settlement agreement,[1] and (2) a motion for a preliminary and permanent injunction[2] – as well as Plaintiffs' supplemental memorandum in support of their motions.[3]   Defendant the Plaquemines Parish Government (the "Parish") responds in opposition to both motions.[4]   Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting Plaintiffs' motion to enforce the settlement agreement and entering a permanent injunction giving effect to such enforcement.

## I.      BACKGROUND

Plaintiffs have owned and operated a borrow pit in the Parish since 2013.[5]  "Borrow pits are areas of ground which are excavated or are set to be excavated for the purpose of removing soil and other materials."[6]  *Id.*  Plaintiffs' borrow pit contains clay soil that meets the standards of

---

[1] R. Doc. 27.
[2] R. Doc. 28.  At the hearing on Plaintiffs' motion for a preliminary injunction that was held on May 14, 2026, the parties agreed that the case is ripe for decision on Plaintiffs' motions to enforce the settlement and for a permanent injunction.  R. Doc. 41.
[3] R. Doc. 38.
[4] R. Docs. 33; 39; 42.
[5] R. Docs. 1 at 3; 28-1 at 1.
[6] R. Doc. 1 at 3.

the U.S. Army Corps of Engineers and is excavated and sold for use in the construction of levees, as well as for private industrial use.[7]

In 2012, the Parish council passed an amendment to the local borrow pit ordinances known as the "2012 Borrow Pit Ordinance" (the "Ordinance").[8]  The Ordinance regulates borrow pit operations and specifies the permitting process, the calculation of administrative fees, and the requirements for borrow pit operations.[9]  Plaintiffs' borrow pit was permitted under the Ordinance in 2013 and again in 2020.[10]

In 2017, Plaintiffs filed this suit against the Parish, alleging that the Ordinance was unconstitutional and was being applied unconstitutionally in violation of their due process and equal protection rights, particularly with respect to the Parish allowing exemptions or variances from the backfill requirements.[11]  On May 7, 2018, the parties entered into a settlement agreement and the suit was subsequently dismissed, with the Court reserving jurisdiction to enforce the settlement agreement.[12]  The settlement agreement provided that Plaintiffs agreed to release their claims against the Parish challenging the constitutionality and legal validity of the Ordinance in exchange for the Parish waiving certain requirements of the Ordinance, particularly the backfill requirement, in Plaintiffs' favor.[13]  Specifically, with respect to the Ordinance's backfill requirement, the settlement agreement provides that:

> [Plaintiffs] shall be exempted, released from, and granted a variance from the Ordinance's backfill requirements for all sales prior to the Effective Date of this Agreement which are alleged to be made in violation of the Ordinance, and from

---

[7] R. Doc. 28-1 at 1-2.
[8] R. Doc. 1 at 4.
[9] *Id.*
[10] R. Doc. 28-1 at 2.
[11] *See* R. Doc. 1 at 1-17.  "Backfilling" means filling the borrow pit with sand or other materials to its pre-excavation elevation upon the cessation of operations.  *Id.* at 9.
[12] R. Docs. 19; 27-2.
[13] *See* R. Doc. 27-2.

2

any requirement to backfill Plaintiffs' Borrow Pits going forward from the Effective Date.[14]

The settlement agreement required Plaintiffs to comply with all other provisions of the Ordinance and obligated Plaintiffs to pay to the Parish an environmental impact fee of $0.05 per ton of fill material sold to any "private, non-governmental, or quasi-governmental project, whether inside or outside of the Parish."[15]  The settlement agreement does not include a sunset date or outline any events that would terminate its effectiveness.[16]

The Ordinance requires borrow pit operators to obtain a new permit every seven years, which represents an original five-year permit with a possible two-year extension.[17]  Plaintiffs obtained permits in 2013 and 2020, and operated in accordance with the settlement agreement.[18] In December 2025, Plaintiffs discovered that their permit had lapsed in March 2025.[19]  On December 23, 2025, Plaintiffs submitted a permit application for the same operations, with the same footprint, as their prior permits.[20]  According to Plaintiffs, with the 2025 application, "the Parish attempted to condition the permit on Plaintiffs agreeing to waive the 2018 Settlement Agreement that provided Plaintiffs with the variance from the backfill requirement."[21]  On February 12, 2026, the Parish issued to Plaintiffs a temporary and conditional permit that required Plaintiffs to provide a plan for complying with the backfill requirement and a survey, and also limited Plaintiffs' sales to  federally-funded, active public levee projects in the Parish.[22]  Plaintiffs submitted a written plan for complying with the backfill requirement, but reserved their rights and

---

[14] *Id.* at 2-3.
[15] *Id.* at 2.
[16] *See id.* at 1-7.
[17]  R. Doc. 27-1 at 4 n.3 (citing Plaquemines Parish Code of Ordinances, ch. 18, art. V, § 18-89(h)).
[18] *Id.* at 4.
[19] R. Doc. 38 at 11.
[20] R. Doc. 28-1 at 3.
[21] *Id.*
[22] R. Docs. 28-1 at 3; 38 at 2; 33 at 5.

arguments that they are exempt from the backfill requirement under the 2018 settlement agreement.[23]  However, Plaintiffs did not build the specified fence or supply the required survey, and the Parish did not have sufficient information to verify that Plaintiffs were selling material only to approved levee projects.[24]

On April 16, 2026, the Parish issued to Plaintiffs a stop work order stating that Plaintiffs were in violation of the temporary permit because they failed to provide a plan for complying with the backfill requirement, they needed to increase their letter of credit from $250,000 to $1,500,000 because of the new backfill requirement, and they did not have a fence.[25]  As a result, on April 21, 2026, Plaintiffs filed their motion to enforce the settlement agreement along with a motion for a temporary restraining order and preliminary injunction.[26]  On April 27, 2026, this Court heard arguments on Plaintiffs' motion for injunctive relief and granted a temporary restraining order that allowed Plaintiffs to continue operating their borrow pit on condition that, by May 14, 2026, they erect a fence on their property in compliance with the Ordinance and they provide the Parish with an acceptable survey within a reasonable time.[27]  The Court allowed the parties time to file supplemental briefs and set a hearing on the preliminary injunction and motion to enforce settlement agreement for May 14, 2026.[28]  At that hearing, the parties agreed that the case is ripe for decision on Plaintiffs' motions for preliminary and permanent injunction and to enforce the settlement.

---

[23] R. Doc. 28-1 at 3.
[24] R. Doc. 33 at 5.
[25] R. Docs. 28-1 at 4-6; 38 at 3.
[26] R. Docs. 27; 28.
[27] R. Docs. 36; 37.
[28] R. Docs. 36; 37.

## II.    PENDING MOTION

Plaintiffs seek an order enforcing the settlement agreement as a valid contract and finding that the Parish's current efforts to impose the Ordinance's backfill requirements on their sales are in violation of the settlement agreement's terms.[29] Plaintiffs also seek a preliminary and permanent injunction that allows them to proceed with their borrow pit permit application unencumbered by the Ordinance's backfill requirement and that requires the Parish to process Plaintiffs' permit application without prejudice to Plaintiffs as a result of their having acted to prevent the Parish from violating the settlement agreement.[30] They argue that the settlement agreement is a valid, enforceable contract that the Parish had authority to enter into to resolve the claims they brought in this suit years ago.[31] Plaintiffs contend that the settlement agreement, *i.e.*, the law between the parties, forever exempts them from the Ordinance's backfill requirement.[32] Plaintiffs point out that the settlement agreement does not have language limiting its applicability to a particular permit or stating that Plaintiffs' failure to comply with any portion of the Ordinance would terminate the settlement agreement.[33] Thus, say Plaintiffs, the Parish cannot condition the granting of Plaintiffs' current permit application on Plaintiffs' waiver of the settlement agreement and submission to the backfill requirement.[34] Plaintiffs also request that the Court use its inherent power to impose attorney's fees and costs on the Parish as a sanction for its acting in bad faith.[35]

The Parish responds in opposition, arguing that the settlement agreement terminated when Plaintiffs' 2020 permit expired and they continued to operate without a permit in violation of the

---

[29] R. Docs. 27; 28; 38 at 14.
[30] R. Docs. 27; 28; 38 at 14.
[31] R. Docs. 27-1 at 5-7; 28-1 at 7-8; 38 at 6-7.
[32] R. Docs. 27-1 at 7-9; 28-1 at 7-9; 38 at 7-14.
[33] R. Docs. 27-1 at 9; 38 at 7-14.
[34] R. Doc. 27-1 at 7.
[35] R. Docs. 27-1 at 9-10; 38 at 15.

Ordinance.[36]  By that logic, the Parish argues that Plaintiffs' pending permit application is for a new permit to which the settlement agreement does not apply because the settlement agreement implicitly applied only so long as Plaintiffs were in compliance with the Ordinance, meaning here that Plaintiffs' borrow pit had a valid permit.[37]  Otherwise, says the Parish, Plaintiffs could cease operations and apply for a new permit years later and still be exempt from the backfill requirement, which result the Parish characterizes as "absurd."[38]  Alternatively, the Parish argues that, if the Court finds that the settlement agreement grants to Plaintiffs a perpetual waiver of the backfill requirement, this outcome is not what the Parish intended, so there was no meeting of the minds and no valid contract.[39]  The Parish cites to the affidavit of former Parish council member John Barthelemy, in which he attests that he would not have made the motion to approve the settlement agreement had he understood it was not subject to Plaintiffs' timely renewal and maintenance of a valid permit.[40]

In reply, Plaintiffs reassert that the settlement agreement is a valid and enforceable contract that has not terminated under its terms because it contains no expiration date and its existence is not tied to a specific permit.[41]  Plaintiffs contend that this argument is supported by the fact that the Parish issued to Plaintiffs a new permit in 2020 (after the settlement agreement was executed) that was not conditioned on Plaintiffs being subject to the Ordinance's backfill requirement.[42]  Plaintiffs also dispute the Parish's claim that the settlement agreement terminates if Plaintiffs fail to fully comply with the Ordinance (especially by inadvertently failing to renew a permit), contending that the settlement agreement does not incorporate the provisions of the Ordinance as

---

[36] R. Doc. 39 at 1-3.
[37] *Id.* at 3-4.
[38] *Id.* at 4.
[39] *Id.* at 5-7.
[40] *Id.* (citing R. Doc. 39-2).
[41] R. Doc. 38 at 6-7, 12-14.
[42] *Id.* at 12-14.

necessary terms and conditions of the agreement.[43]    Instead, say Plaintiffs, the settlement agreement merely specifies that, other than the backfill requirement, the Ordinance applies to Plaintiffs, but Plaintiffs' only obligations under the settlement agreement itself were to dismiss the lawsuit and pay the environmental impact fee, both of which they have done.[44]  Plaintiffs highlight that the Parish continued to accept their payment of the environmental impact fee even after the inadvertent lapse of the 2020 permit in March of 2025.[45]

After the May 14, 2026 hearing, the Parish filed a supplemental memorandum indicating that it could not find a case on point arising under Louisiana law.[46]  The Parish cites a few cases that it claims are analogous and argues that Plaintiffs' post-settlement wrongful conduct – namely, not maintaining their permit – should preclude them from continuing to benefit from the settlement agreement because, otherwise, they would have "*carte blanche* to continue to violate the core tenant of the [Ordinance], that no excavation should take place without a valid permit."[47]  The Parish contends that Plaintiffs' failure to maintain a valid permit amounts to their failure to "h[old] up their end of the bargain" reached in the settlement agreement.[48]  It further argues that it would not have entered into the settlement agreement had it understood that Plaintiffs could repeatedly violate the Ordinance and still be entitled to the backfill variance.[49]  The Parish asserts that the issuance of the temporary permit did not revive the settlement agreement and that Plaintiffs' acceptance of that temporary permit evidences their agreement to its terms, including the newly imposed backfill requirement.[50]

---

[43] *Id.* at 8-12.
[44] *Id.*
[45] *Id.* at 11.
[46] R. Doc. 42 at 1-13.
[47] *Id.* at 4-9 (quote at 4).
[48] *Id*. at 8.
[49] *Id.* at 8-9.
[50] *Id.* at 9-11.

7

### III.   LAW & ANALYSIS

#### A.  Enforcement of a Settlement Agreement

When a court's final order of dismissal integrates the parties' settlement into that order by "explicitly retain[ing] jurisdiction 'to enforce the settlement'" between the parties, "[e]nforcing the settlement … falls within the court's unquestionable power to enforce its own decrees." *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 452 (5th Cir. 2022).  The construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally.  *Richardson v. Famous Bourbon Mgmt. Grp., Inc.*, 857 F. App'x 182, 184 (5th Cir. 2021) (citing *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987)).  "The settlement agreement between the plaintiffs and the defendants can be enforced on a finding that a binding, written agreement exists under Louisiana law." *Id.* (citing *Lee v. Hunt*, 631 F.2d 1171, 1173-74 (5th Cir. 1980)).

Under Louisiana law, a settlement agreement is called a compromise.  La. Civ. Code art. 3071.  A compromise is defined as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." *Id.*  "When a party fails to perform a compromise, the other party may act either to enforce the compromise or to dissolve it and enforce his original claim." La. Civ. Code art. 3081.

Compromises are contracts, so the "'rules of construction applicable to contracts are therefore used.'" *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481-82 (5th Cir. 2014) (quoting *Doré Energy Corp. v. Prospective Inv. & Trading Co.*, 570 F.3d 219, 225 (5th Cir. 2009)).  "A compromise instrument is the law between the parties and must be interpreted according to the parties' intent." *Chauvin v. Exxon Mobil Corp.*, 158 So. 3d 761, 766 (La. 2014); *see also Meadows v. Adams*, 316 So. 3d 5, 14 (La. App. 2020) (same).

Article 2046 of the Louisiana Civil Code provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  The Louisiana supreme court clarified that "Article 2046 emphasizes that the process involves no *further* interpretation, as opposed to no interpretation at all."  *Ortego v. State, Dep't of Transp. & Dev.*, 689 So. 2d 1358, 1363 (La. 1997) (emphasis in original).  "Courts apply this rule of construction in light of the general principle that the instrument must be considered as a whole and in light of attending events and circumstances."  *Trahan v. Coca Cola Bottling Co. United, Inc.*, 894 So. 2d 1096, 1107 (La. 2005).  While "[t]he words of a contract must be given their generally prevailing meaning," "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter."  La. Civ. Code art. 2047.

This dispute comes down to one simple question – that is, whether Plaintiffs' admitted failure to maintain a current permit terminated the settlement agreement.  By the clear, explicit terms of the settlement agreement, the answer is no.  The settlement agreement's reciprocal obligations required Plaintiffs to release their litigation claims and pay the negotiated environmental impact fees in exchange for the Parish granting to them a variance from the Ordinance's backfill requirement.[51]  The settlement agreement further explained that Plaintiffs remain subject to all other requirements of the Ordinance, which they do not deny.[52]  Nowhere does the settlement agreement condition its continued existence on Plaintiffs' compliance with the Ordinance.[53]  Moreover, the settlement agreement, by its very terms, is not tied to the existence of a specific permit and the parties' course of dealings shows that it indeed was not because the Parish

---

[51] *See* R. Doc. 27-2.
[52] *See id.*
[53] *See id.*

9

issued a new permit to Plaintiffs in 2020, after the execution of the settlement agreement. In sum, there is nothing in the settlement agreement specifying when or under what conditions it will terminate.

It is clear that the Parish now has buyer's remorse and is attempting to use the Plaintiffs' inadvertent permit lapse as an escape hatch from the settlement agreement's terms. To that end, the Parish offers several unpersuasive arguments. First, the Parish contends that allowing Plaintiffs to continue to benefit from the settlement agreement after their permit lapsed would give them "carte balance" to violate the Ordinance in every way or cease operations for lengthy periods of time and still be able to retain the benefit of the settlement agreement by being excepted from the backfill requirement if they choose to continue operating. This argument ignores the fact that the settlement agreement requires Plaintiffs to abide by every provision of the Ordinance, save the backfill requirement. Plaintiffs freely admit as much. If Plaintiffs fail to comply with the Ordinance, the Parish has a remedy – namely, stopping Plaintiffs' operations until they come into compliance. Indeed, the Parish did that here and Plaintiffs brought their operations into compliance (other than the backfill requirement). Thus, Plaintiffs are not free to violate the Ordinance and continue to operate. However, the Parish, for its part, cannot condition Plaintiffs' continued operation – including, the issuance of future permits – on the Plaintiffs' relinquishment of the backfill variance that they bargained for in the settlement agreement.

The Parish also argues that Plaintiffs' operation under the temporary permit constitutes Plaintiffs' acquiescence to its terms, including the backfill requirement. This argument ignores the facts that Plaintiffs and the Parish continued to have discussions during this period regarding the applicability of the backfill requirement to Plaintiffs and that Plaintiffs filed the instant motions

before this Court seeking to enforce the settlement agreement to preserve their position. There is no evidence that Plaintiffs ever agreed to the backfill provision.

Finally, the Parish contends, citing a post hoc affidavit, that it would not have entered into the settlement agreement if it understood that it granted Plaintiffs a perpetual waiver of the backfill requirement. The settlement agreement's terms are clear and explicit. The contract does not have an end date or termination clause. "In Louisiana, 'a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him.'" *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, 2021 WL 359735, at *13 (M.D. La. Feb. 2, 2021) (quoting *Geovera Specialty Ins. Co. v. Odoms*, 836 F. App'x 197, 202 (5th Cir. 2020)). Representatives of the Parish are presumed to have read and understood the settlement agreement before it was approved and signed. The Parish cannot escape its obligations by saying that one former council member now claims he did not understand fully its terms. The words of the settlement agreement are clear and explicit and yield the best understanding of the parties' intent. Accordingly, Plaintiffs' motion to enforce the settlement agreement is granted.

## B. Preliminary and Permanent Injunction

"The legal standard for obtaining a permanent injunction mirrors the legal standard for obtaining a preliminary injunction." *Viet Anh Vo v. Gee*, 301 F. Supp. 3d 661, 664 (E.D. La. 2017) (citing *Lionhart v. Foster*, 100 F. Supp. 2d 383, 385-86 (E.D. La. 1999)). "A plaintiff must demonstrate: '(1) actual success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) the injunction will not disserve the public interest.'" *Id.* (quoting *Causeway Med. Suite v. Foster*, 43 F. Supp. 2d 604, 610 (E.D. La. 1999)).

Plaintiffs have succeeded on the merits by proving that the settlement agreement is a valid, enforceable contract and that the Parish violated it by purporting to impose upon Plaintiffs the Ordinance's backfill requirement.  Plaintiffs have also shown that, without a permanent injunction, the Parish may continue to violate Plaintiffs' contractual rights by attempting to impose the backfill requirement with respect to future permit applications.  This threatened injury outweighs any damage the injunction may cause to the Parish because the Parish entered into the settlement agreement and is bound by its terms, regardless of its current second thoughts.  Finally, the injunction will not disserve the public interest because parties should be bound to their contractual obligations.  And, perhaps more importantly, Plaintiffs' operation provides clay to build levees that protect people and property within the Parish.  The Court strains to see what the Parish gains by shutting down Plaintiffs' operation.  Thus, Plaintiffs' motion for a preliminary and permanent injunction is granted.

## C. Attorney's Fees and Costs

Plaintiffs seek an award of attorney's fees and costs against the Parish under the district court's inherent authority, arguing that the Parish intentionally, and improperly, conditioned the granting of their permit application on their waiver of the settlement agreement and submission to the backfill requirement.[54]  Plaintiffs characterize the Parish's behavior as "oppressive conduct and [a] flagrant abuse of power" that have forced them to file the present motions.[55]

As noted by the Fifth Circuit, "[f]ederal courts have the inherent power to assess sanctions under certain circumstances, such as when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has defiled the very temple of justice." *In re Dall. Roadster, Ltd.*, 846 F.3d 112, 134 (5th Cir. 2017) (quotations omitted).  "In using its inherent power, a district

---

[54] R. Doc. 27-1 at 9-10.
[55] *Id.*

12

court must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* (quotation omitted); *see World Fuel Servs. (Singapore) Pte Ltd. v. M/V Varesia*, 2019 WL 266302, at *3 (E.D. La. Jan. 18, 2019). Considering the parties' arguments and submissions on the papers and in court, there is no evidence that the Parish acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or that it has defiled the very temple of justice, as to warrant the imposition of attorney's fees and costs as a sanction under the Court's inherent power. While it is true that Plaintiffs had to seek relief from the Court to enforce the settlement agreement, there is nothing in the record to show that the imposition of a sanction is warranted. Thus, Plaintiffs' request for attorney's fees and costs is denied.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion to enforce the settlement agreement (R. Doc. 27) is GRANTED as to enforcement of the settlement agreement but DENIED as to the request for attorney's fees and costs.

IT IS FURTHER ORDERED that Plaintiffs' motion for a preliminary and permanent injunction (R. Doc. 28) is GRANTED. Therefore, the Parish must (1) allow Plaintiffs to proceed with their borrow pit permit application unencumbered by the Ordinance's backfill requirement and (2) consider and process Plaintiffs' permit application without prejudice to Plaintiffs as a result of their having acted to prevent the Parish from violating the settlement agreement.

New Orleans, Louisiana, this 3rd day of June, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

13